# Whitney et al. v. Newbold.
### (Decided June 8, 1937.)

RODES K. MYERS, R. W. KEENON and L. W. MORRIS for appellants.

CLIFFORD SMITH and WILLIAM R. ATTKISSON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

For a number of years, A. M. Whitney, doing business as the Whitney Transfer Company, has been operating a common carrier truck line from Owensboro to Louisville and from Louisville to Owensboro over U. S. Highway No. 60, holding the sole and only certificate of convenience and necessity for such operation over that route

In December, 1935, C. E. Newbold, engaged in business under the name of the Newbold Transfer Company, filed his application with the Department of Motor Transportation for a certificate of convenience and necessity to operate motortrucks as common carriers from Owensboro to Louisville and return over Highway 60, but he did not seek to serve intermediate points. In March, 1936, the Eck Miller Transfer Company made a similar application The applications were heard together before Cliff Claypool, former Commissioner of Motor Transportation. After hearing the evidence the commissioner rendered his decision and issued an order denying both applications. The Newbold Transfer Company alone, within the time and in the manner provided by section 2739j-86, Kentucky Statutes, filed a petition of appeal in the Franklin circuit court. After review of the record, the court rendered the following memorandum opinion:

"The finding of facts in issue by the commissioner is unsupported by substantial evidence, that is, evidence that is unbiased and without self-interest.

"The order of the commissioner is now set aside, and the commissioner is directed to grant and issue to the appellant the certificate applied for."

Judgment was entered in conformity with the opinion, and this appeal followed.

As we view the matter, the decisive question to be determined on this appeal is whether there is any substantial evidence to support the commissioner's finding of facts in issue.

Section 2739j-87, relating to review by the circuit court provides:

"No new or additional evidence may be introduced in the Circuit Court except as to fraud or miscon-

duct of some person engaged in the administration of this Act and affecting the order, ruling or award, but the court shall otherwise hear the case upon the certified record or abstract thereof, and shall dispose of the case in summary manner, its review being limited to determining whether or not: One. The Commission acted without or in excess of its power; Two. The order, decision or award was procured by fraud; Three. The order, decision or award is in conformity to the provisions of this Act; Four. The finding of facts in issue is supported by any substantial evidence.''

The following section authorizes an appeal from the circuit court to the Court of Appeals, and necessarily this court on review is likewise confined to the limits prescribed in the quoted section of the statute. The commissioner found from the evidence that no more service was necessary as a matter of convenience or necessity between Louisville and Owensboro. The evidence introduced by appellee and by the Eck Miller Transfer Company on the hearing discloses widespread desire among business men and concerns in Owensboro for additional truck service between that point and Louisville, and a number of witnesses stated in substance that the additional service was necessary to meet the needs of shippers and receivers of freight at Owensboro; but when asked to go into particulars, many of them stated that better service would result from competition that would follow if another carrier was granted a certificate over Highway 60 between Louisville and Owensboro; also, that more prompt and efficient service would come from the Newbold Transfer because it was a local concern and had its transportation facilities there. Many witnesses also stated that because there was no competition the attitude of the Whitney Transfer Company was: ''Here's our service, you can take it or leave it.'' Various witnesses testified to delays on the part of the Whitney Transfer Company in taking up or delivering freight, but most of this evidence related to isolated instances and does not indicate habitual or continued neglect of any shipper or shippers.

On the other hand, it is shown that railroad and express companies and truck lines over other routes also furnish facilities for shippers from Louisville to Owensboro and Owensboro to Louisville, and in addi-

tion, bus companies carry light express between these points; that these carriers and appellant have ample facilities to take care of all the business and that they can and will increase their facilities to meet any growing demand, however with the exception of one shipper engaged in business in Owensboro who testified that he found the service furnished by appellant satisfactory, all the witnesses who testified that the facilities now furnished were ample to meet the needs and that there was no necessity for the additional service, were officials or in some way connected with the carriers who were opposing the granting of the certificate to appellee.

It is frankly admitted in brief by counsel for appellee that there is evidence that appellant and other carriers between Owensboro and Louisville furnished adequate facilities for transportation of freight between those points, but it is argued in effect, as was indicated by the lower court, this evidence was attended with bias and self-interest and so overborne by the evidence for appellee that the finding of the commissioner should not be sustained.

If the determination of the matter as an original proposition had rested upon this court, we possibly would have reached a different conclusion from that reached by the commissioner, but that is not the standard set for determining the appeal, since we are limited by the statute to a determination of whether the findings of fact in issue by the commissioner are supported by any substantial evidence.

The quoted section (2739j-87) is practically a verbatim copy of that part of our workmen's compensation statute relating to review by courts of awards made by the compensation board (Kentucky Statutes, sec. 4935), except that in the latter the fourth item to be considered by the board is expressed thus:

"If findings of fact are in issue, whether such findings of fact support the order, decision or award."

While in the statute under consideration the court is limited in its review by item 4 to determining whether or not "the finding of facts in issue is supported by any substantial evidence." The constitutionality of the workmen's compensation law has been upheld, see Greene v. Caldwell et al., 170 Ky. 571, 186 S. W. 648, 652, Ann. Cas. 1918B, 604, and we have consistently held that in the absence of fraud or mistake, findings of

fact by the compensation board are conclusive upon the court if supported by any competent and substantial evidence. Coleman Mining Company v. Wicks, 213 Ky. 134, 280 S. W. 936; B. F. Avery & Sons v. Carter, 205 Ky. 548, 266 S. W. 50; Kingston-Pocahontas Coal Company v. Maynard, 209 Ky. 431, 273 S. W. 34; Hale v. State Highway Commsision, 262 Ky. 753, 91 S. W. (2d) 23. Here, there is no claim of fraud or mistake and only a matter of evidence involved. It is true that the first workmen's compensation act passed by the Legislature of this state was held unconstitutional because it was in contravention of certain rights guaranteed under our Constitution. See Kentucky State Journal Company v. Workmen's Compensation Board, 161 Ky. 562, 170 S. W. 437, 1166, L. R. A. 1916A, 389, Ann. Cas. 1916B, 1273. Under that act it was compulsory upon employers and employees coming within its purview to accept its provisions. The later act, which was upheld in Greene v. Caldwell, supra, was not compulsory but made the acceptance of its provisions by either the employer or employee optional; and it was held in effect that if the employer and employee voluntarily agreed to operate or work under the act, they would be bound by its provisions. In the course of that opinion it, among other things, was said:

"And the authority for the legislation is found in the police power of the state; in the power to regulate and control by legislation all matters affecting, not only the health and the safety, but the general welfare, of the people individually, as well as in classes into which they may reasonably be grouped; and this extension of the power has been sustained by the courts practically with unanimity."

In the case under consideration no inherent rights or any right guaranteed by the Constitution is involved.

Section 2739j-62 of the Statutes reads:

"It is hereby declared that the business of contract carriers is affected with the public interest, and that the safety and welfare of the public, the preservation and maintenance of the public highways, and the integrity of the regulation of common carriers require the regulation of contract carriers to the extent hereinafter provided."

By that section and also by section 2739j-50, relating to matters to be considered by the commission in

granting or refusing a certificate, the Legislature has determined the public policy of the state with respect to the use of highways by common carriers of property, and since the act in question does not run counter to any provision of the Constitution, it is not for courts to determine the wisdom of that policy.

At a great outlay of public funds, the state has constructed and is maintaining a system of highways. The unrestricted use of such highways by common carriers of freight or passengers would result in damage to them and entail great additional cost for their repair and maintenance and render the use of them by the public increasingly hazardous; and not only so, but unlimited competition would greatly impair if it did not result in financial ruin to all common carriers. Unquestionably this law finds justification in the police power of the state, which as stated in syllabi to Smith v. Commonwealth, 175 Ky. 286, 194 S. W. 367, "is a sovereignty inherent in the state and founded in necessity, and which it is the duty of the government to exercise for the benefit of its people, whenever public policy demands regulations to protect their morals, safety, health and order, or to insure such economical conditions as are required by an advanced civilization." See, also, Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923; United States v. E. C. Knight Company, 156 U. S. 1, 15 S. Ct. 249, 39 L. Ed. 325; Kentucky Traction & Terminal Company v. Murray, 176 Ky. 593, 195 S. W. 1119; Commonwealth v. Payne Medicine Co., 138 Ky. 164, 127 S. W. 760; Commonwealth v. Reinecke Coal Mining Company, 117 Ky. 885, 79 S. W. 287, 25 Ky. Law Rep. 2027; Berea College v. Commonwealth, 123 Ky. 209, 94 S. W. 623, 124 Am. St. Rep. 344, 13 Ann. Cas. 337, 29 Ky. Law Rep. 284.

It is maintained by appellee that, "Competition is the life of trade," and that the act as administered results in monopoly and the stifling of competition. The evidence shows that there is already competition in the transportation of freight between Louisville and Owensboro, and the commissioner found from evidence that there was no necessity for the additional service that appellee proposed to render.

Sections 2739j-56, 2739j-57, 2739j-58, 2739j-59, 2739j-60, 2739j-61, of the Statutes provide adequate safeguards against extortion, discrimination, or unlawful rates and charges for transportation of freight, and

provide that the matter of rates, the adequacy of facilities employed, and services rendered may be determined by the tax commission upon which is imposed the duty of administering the law. It will thus be seen that the public is fully protected in the matter of rates, charges, etc., and is denied no advantage that would be afforded by competition in the matter of facilities. It is tacitly at least conceded by counsel for appellee in brief as well as by the lower court in the memorandum opinion that disregarding self-interest and bias of witnesses, there is some substantial evidence to support the findings of fact in issue. If the case turned on the preponderance of evidence, self-interest, bias, or prejudice of the witnesses might well be considered and might be a controlling factor in determining the weight of the evidence; but as already noted, the courts on review may not put the evidence in the balances to determine on which side the weight lies, but are limited by the statute to the narrow inquiry whether there is any substantial evidence to support the commissioner's finding of fact. We do not think the court in its review would be justified in wholly disregarding evidence otherwise substantial merely because witnesses may have been biased because of self-interest. If self-interest nullified the effect of evidence that otherwise would be considered substantial, many worthy applications for compensation by injured employees would be denied because the application must often be sustained by the evidence of the applicant; and this would also be true in litigation of every character.

There is evidence that some time in the past appellant bought two competing truck lines operated in the same territory and over the same route, and this is the basis for argument by counsel for appellee that in so doing, appellant violated section 201 of the Constitution, which in substance prohibits the consolidation of competing lines of another; and that the only remedy of the public against attempt of appellant to monopolize the transportation over Highway 60 is for the court to set aside the order of the commissioner and direct that a certificate be issued to appellee.

The act with which we are dealing was enacted by the General Assembly of 1932 (chapter 104). It provides for the renewal of certificates that had been granted before its enactment, and section 7 of article 2 thereof (Kentucky Statutes, 2739j-51) in part follows:

"If two or more operators who have been engaged in the transportation of property for compensation, before this act becomes effective, apply for a certificate authorizing them to perform substantially the same service in the same territory under similar conditions, and if the said Commission shall be of the opinion that, in accordance with the provisions of this Act, certificates should be granted to some but not all of such applicants, preference shall be given to the operator or operators who have been longest engaged in such service, provided such service has been rendered in accordance with the requirements of the law."

As appears from the quoted excerpt from that section, the commissioner may limit the number of lines operating over given routes although some or all of them had been operating under a certificate granted before the act of 1932 became effective. But even if this were not true, it is manifest that under the act the commission would not be compelled to grant a certificate for additional service merely because the holder of a certificate over the same route had theretofore purchased a competing line. The acquisition of competing lines in violation of section 201 of the Constitution might be prevented by appropriate action, or the court might refuse to recognize or enforce such contract as between the competing carriers. But that is not a matter for consideration in a proceeding of this character except as it might have evidential bearing on the question of necessity for additional service.

It is our conclusion that there is evidence of a substantial character to support the findings of fact in issue, and under the quoted provisions of the statute that is conclusive on the court.

Wherefore the judgment is reversed, with directions to enter judgment in conformity with this opinion.

Whole court sitting.